UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Jennings                                    Civil Action N0. 6:15-cv-2883

versus                                      Judge Rebecca F. Doherty

Commissioner of Social Security             Magistrate Judge Carol B. Whitehurst

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be reversed and remanded.

### ADMINISTRATIVE PROCEEDINGS

The claimant, Keith Jennings, fully exhausted his administrative remedies prior

to filing this action in federal court.  The claimant filed an application for disability

insurance benefits ("DIB") and an application for supplemental security income

benefits ("SSI"), alleging disability beginning on January 31, 2013.[1] His applications

were denied.[2]  The claimant requested a hearing,[3] which was held on May 14, 2015

before Administrative Law Judge Michael Hertzig.[4] A vocational expert, Beth Drury,

---

[1]        Rec. Doc. 7 at Tr. 15.

[2]        Id.

[3]        Id.

[4]        The hearing transcript is found at Rec. Doc.7 at Tr. 29.

testified at the hearing.[5]  The ALJ issued a decision on July 1, 2015,[6] concluding that the claimant was not disabled within the meaning of the Social Security Act ("the Act") from January 31, 2013 through July 1, 2015, the date of the decision.  The claimant asked for review of the decision, but the Appeals Council concluded on November 17, 2015, that no basis existed for review of the ALJ's decision.[7] Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

Mr. Jennings was born on July 31, 1966.[8]  At the time of the ALJ's decision, he was 46 years old, defined as a younger individual age. He did not graduate from high school.[9]  He has past relevant work experience as a farm hand, general laborer, pipe helper, tank feeder for seafood plant, farm tractor driver and a choker at a sugar

---

[5]    Id. at Tr. 45-48.

[6]    Id. at Tr. 25.

[7]    Id. at Tr.1.

[8]    Id. at Tr. 24.

[9]    Id. at Tr. 36.

cane processing plant.[10]  Mr. Jennings has been diagnosed with Type II diabetes, diabetic retinopathy and non-proliferative diabetic neuropathy with clinically significant macular edema and early glaucoma in the left eye, suspect glaucoma in the right eye and cataracts in both eyes.[11]  Additionally, he has been diagnosed with hypertension. The claimant alleges that he has been disabled since January 31, 2013[12] due to occasionally blurry vision and leg pain; he returned to work in late 2014, but had to stop by January 8, 2015 due to leg pain.[13] He alleges his current symptoms include that his right arm and leg are "paralyzed" since a March 2015 stroke.[14]

In a Disability Determination examination performed on September 21, 2013 by Michael P. Hulin, M.D., the claimant complained of a burning sensation and feeling of fullness in both feet over the past two years. He indicated that the symptoms resolved in the evening with elevation of his feet, and claimed to remain compliant with medication for diabetes and hypertension. *Tr. 236-238.* The claimant's other complaints included some back pain and occasional chest pain, with medications including Carvedilol (Coreg), Benazepril (Lotensin), Metformin, Gabapentin

---

[10]      Id. at Tr. 21, Tr. 135-138.

[11]      Id. at Tr. 18, 151, 156, 245, 307, 316.

[12]      Id. at Tr. 21

[13]      Id.

[14]      Id.

(Neurontin), Cyclobenzaprine (Flexeril), and Tramadol. *Tr. 236*. On physical examination, the claimant endorsed some symptoms consistent with low back pain and was observed to have a small callus, with a small area of central ulceration, on the plantar surface of his right foot. He denied sensory deficits, however, and was able to ambulate without difficulty, walk on his heels and toes, and perform heel-to-toe walking. He had 5/5 gross motor strength in all proximal muscle groups and normal deep tendon reflexes. Dr. Hulin noted in his impressions that the claimant had chronic diabetes, with an "associated report" of neuropathy in his feet, but with good sensation to fine touch bilaterally in his distal hands and feet. Dr. Hulin offered that the lesion was consistent with an early diabetic ulcer, which could correlate with some end-organ damage. *Tr. 237.*

A Physical Residual Functional Capacity assessment on the claimant was performed on March 15, 2014 by James Williams, M.D., a non-examining State medical consultant. *Tr. 55-57.* Dr. Williams opined that the claimant had exertional limitations of occasionally lifting/carrying 20 pounds, frequently lifting/carrying 10 pounds, and standing/walking and sitting about 6 hours in an 8 hour day. Hence, he opined that the claimant had the ability to perform a full range of light level work. *Id.*

The claimant was examined regularly at Chabert Medical Center from May 20, 2013 through March 25, 2015. *Tr. 205-235, 245-341.* His medical records reflect

that the claimant was seen for controlled type II diabetes and was diagnosed with non-proliferative diabetic neuropathy, with clinically significant macular edema in the left eye; early glaucoma in the left eye, suspect in the right eye; and nuclear sclerosis (cataracts) bilaterally. *Id*.

In an eye examination during the May 20, 2013 examination, the claimant was noted to have 20/30 visual acuity and apparent restrictions in his visual field. *Tr. 205-211*. On February and May, 2014, he was noted to have 20/20 visual acuity in each eye on repeat examinations. *Tr. 222, 212., 328.* While the claimant's vision occasionally tested at 20/20 or 20/50, in the most recent reports it did not test lower than about 20/30 in either eye on formal eye examination. *Tr. 225, 237, 326.* His ocular treatment included eye drops for glaucoma, Avastin injections into both eyes, and focal laser treatments. *Tr. 328.* On December 5, 2014, the claimant refused the Avastin injections because he was driving. *Tr. 266.*

On January 27, 2015, the claimant presented at the Chabert Medical Center complaining of ulcers on his right foot. He indicated that one of the ulcers occurred in November, 2014 after he cut a bunion off his foot and the wound never healed. *Tr. 268-269*. The claimant was provided instructions on diabetic foot care. *Tr. 273*. On February 19, 2015, the claimant presented with a second ulcer of another part of the

right foot. He was advised to keep his feet clean and apply hydrogel to the wounds. *Tr. 284.*

On March 25, 2015, the claimant sought treatment at the Chabert Medical Center with complaints of weakness in the right arm and leg which he first noticed in December, 2014, but attributed to a flu shot he had received. *Tr. 19, 286-287, 295*. He reported that his symptoms worsened on the day of the exam when he realized that he couldn't get up to walk.  On examination, he had normal range of motion, reflexes, and sensation, but had 4/5 strength in the right arm and leg versus 5/5 strength on the left side. *Tr. 289, 299*. Medical imaging showed complete occlusion of the left internal carotid artery, 20-30% occlusion of the right internal carotid artery, and an acute infarction in the left superior frontal cortex without acute intracranial hemorrhage. *Tr. 289-294.* A CT scan also showed "old left sided white matter infarcts. Old lacunar infarct in the right thalamus.... Small left posterior left frontal sub-cortical/cortical infarct noted." *Tr. 293-294*. The attending physician noted that the claimant's "timeline of weakness does not fit acute stroke but will treat with ASA [Acetylsalicylic Acid, i.e., aspirin] daily." *Tr. 300, 303*. Plaintiff was discharged on March 27, 2015, with a diagnosis of "acute CVA (cerebrovascular accident)." He was referred to physical therapy, occupational therapy and speech therapy and advised to seek immediate treatment if symptoms worsened. *Tr. 302*.

-6-

On July 16, 2015, approximately two weeks after the ALJ's opinion was rendered, the claimant was seen at Franklin Foundation Hospital for a subsequent acute infarct at the right frontoparietal junction. *Tr. 2, 202.* While these records are not contained in the Administrative Record, the Record does contain references of these medical records which were attached to correspondence from the claimant's attorney and submitted to the Appeals Council, *Tr. 2. Tr. 201-203.* The correspondence noted that both the MRI and a CT scan performed at the time of the second CVA documented "chronic ischemic changes" and that a sonogram and MRA documented the total occlusion of the left internal carotid artery, and 20% - 30% occlusion in the right internal carotid artery. *Id.*

## ANALYSIS

### A.    STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[15]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as

---

[15]    *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

a reasonable mind might accept as adequate to support a conclusion."[16]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[17]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[18]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[19]  Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[20]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3)

---

[16]  *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[17]  *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[18]  42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[19]  *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[20]  *Martinez v. Chater*, 64 F.3d at 174.

the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[21]

In a case such as this one, in which new evidence was presented to the Appeals Council that was not available to the ALJ when his decision was made, this Court must consider the new evidence that was submitted to the Appeals Council.[22]

## B.   <u>Entitlement to Benefits</u>

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[23]  Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[24]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

---

[21]      *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

[22]      *Higginbotham v. Barnhart*, 405 F.3d 332, 338 (5th Cir. 2005).

[23]      See 42 U.S.C. § 423(a).

[24]      42 U.S.C. § 1382(a)(1) & (2).

-9-

be expected to last for a continuous period of not less than twelve months."[25]   A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[26]

## C.   <u>Evaluation Process and Burden of Proof</u>

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[27]  If it is determined at any step of that process that a claimant is or

---

[25]     42 U.S.C. § 1382c(a)(3)(A).

[26]     42 U.S.C. § 1382c(a)(3)(B).

[27]     20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

is not disabled, the sequential process ends.  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[28]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[29] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[30]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[31]

The claimant bears the burden of proof on the first four steps.[32]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[33]  This burden may be

---

[28]    *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[29]    20 C.F.R. § 404.1520(a)(4).

[30]    20 C.F.R. § 404.1545(a)(1).

[31]    20 C.F.R. § 404.1520(e).

[32]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[33]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[34]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[35]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[36]

## D.    THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since January 31, 2013.[37]  This finding is supported by the evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: insulin dependent diabetes mellitus and diabetic neuropathy.[38]  The claimant challenges this finding.

---

[34]    *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[35]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[36]    *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[37]    Id. at Tr. 17.

[38]    Id.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[39]  This finding is supported by the evidence in the record.

The ALJ found that the claimant has the residual functional capacity to perform work at the full range of light work level.[40]

At step four, the ALJ found that the claimant is not capable of performing his past relevant work.[41]

At step five, the ALJ found that the claimant was not disabled from January 31, 2013 through July 1, 2015 (the date of the decision) because there are jobs in the national economy that he can perform.[42]  The claimant challenges this finding.

## E.    THE ALLEGATIONS OF ERROR

The claimant contends that the ALJ failed to properly evaluate the severity of all of Mr. Jennings impairments, including the residual effects of a stroke he suffered on March 25, 2015 and associated cerebrovascular problems, which resulted in a residual functional capacity assessment that was not supported by the evidence.  The

---

[39]    Id. at Tr. 20.

[40]    Id. at 20-21.

[41]    Id. at. 24.

[42]    Id.

claimant also contends that the Appeals Council and the Commissioner erred in failing to follow its own policies and procedures with regard to additional evidence submitted in support of his request for review of the ALJ's unfavorable decision thereby depriving him of an adequate record for the Administrative and Judicial appellate review.

## F.    WHETHER THE ALJ ERRED IN THE STROKE DETERMINATION

Whether a claimant's medical condition qualifies as a "severe impairment" is evaluated at step two of the sequential analysis.   The Commissioner issued regulations defining a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."[43]   The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the Social Security Act.[44]   Therefore, the Fifth Circuit established the following standard for determining whether a claimant's impairment is severe:   an impairment is not severe only when it is a "slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age,

---

[43]    20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1521 ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

[44]    *Stone v. Heckler*, 752 F.2d 1099, 1104–05 (5th Cir. 1985).

education[,] or work experience."[45]  The claimant argues that, under this standard, the ALJ should have found that the effects of his stroke (cardiovascular accident) and his associated arterial blockage are severe impairments.

At the May 14, 2015 hearing, two months after the March 27 stroke, the claimant testified that the stroke left his right arm and leg "paralyzed" in that he was able to walk but had to drag is right leg and that his right arm was paralyzed "to a degree." He stated that he could not use either hand because his fingers cramp and become twisted. Claimant's attorney pointed out that claimant's "talking and responding" seemed unusual and asked him when same began. The claimant stated that "it [had] been like this since I had the stroke." *Tr. 41.*

In his assessment as to whether the effect of the claimant's March 2015 stroke was a severe impairment, the ALJ considered the medical evidence related to the claimant's treatment at the Chabert Medical Center on March 25, 2015.  He noted that the claimant complained of a sudden onset of right-sided weakness and he stated that he had experienced similar symptoms since December 2014 but did not seek treatment because the symptoms resolved. The ALJ noted that the initial examination revealed mild right-sided weakness of the right arm and leg but that the claimant had normal sensation in all extremities. The ALJ made no reference to the MRI and CT

---

[45]      *Stone v. Heckler*, 752 F.2d at 1101.

-15-

scan which included evidence of several older infarcts and lacunar strokes. The ALJ stated that the claimant had normal mental status and no mention of speech or communication difficulties or other neurological deficits—contrary the claimant's noticeably abnormal speech and responsiveness at the hearing. While the ALJ recognized that claimant's MRI of the brain revealed an acute infarct to the left frontal cortex and complete occlusion of the left carotid artery and 20-30% occlusion of the right carotid artery, he made no reference to the severity of the claimant's occluded carotid arteries and his increased risk of additional strokes. Instead, he acknowledged that the claimant began treatment consistent with acute stroke pattern, but specifically noted that the doctor "remarked that the claimant's timeline of weakness did not fit" that diagnosis. The ALJ stated that even though the claimant was referred for occupational, physical, and speech therapy evaluations, there was no indication that such treatment was needed or received. He also opined that there was no evidence to suggest that the claimant continued to suffer right sided weakness or paralysis. The ALJ noted that the claimant was discharged on March 27, 2015 and that it "appeared" the claimant did not require treatment other than medication. Ultimately, the ALJ concluded that the claimant's cerebrovascular accident and arterial blockage was not a severe impairment based on severity and duration.

Following a careful reading of the ALJ's decision, this Court finds that the ALJ should have determined whether the March 2015 stroke and ongoing pattern of cerebrovascular infarcts as well as the existence of  occluded carotid arteries constitute severe impairments.  This error also impacts the validity of the ALJ's evaluation of the claimant's residual functional capacity since every impairment of a claimant – whether severe or not – should be considered in determining residual functional capacity.

This Court finds that the ALJ's decision at step two of the sequential analysis was not reached through the application of proper legal standards, and the undersigned is unable to determine whether the Commissioner's conclusion at step two is or is not based on substantial evidence.  Consequently, remand of this matter is required.

## G.    CONSIDERATION OF ADDITIONAL EVIDENCE

Following the ALJ's ruling, the claimant requested review by the Appeals Council and in an August 13, 2015 letter his attorney submitted the claimant's medical records related to a second cerebrovascular accident (stroke) on July 16, 2015, including an acute infarct at the right frontoparietal junction. *Tr. 202.* The claimant argued that remand was required because the new "evidence is clearly material and concerns the period prior to the time of [the ALJ's] Decision as it

involves a recurrent manifestation of a previously existing condition deemed non severe by the ALJ" and would have changed the outcome of his decision.[46] *Id*. The Appeals Council responded that "[t]his new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before July 1, 2015." *Tr. 2*.

"In deciding whether to deny the claimant's request for review, the AC [Appeals Council] must consider and evaluate any 'new and material evidence' that is submitted, if it relates to the period on or before the ALJ's decision." *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) (citing 20 C.F.R. § 404.970(b)). "For new evidence to be material, there must exist the "reasonable possibility that it would have changed the outcome of the Secretary's determination." *Hamilton-Provost v. Colvin*, 605 Fed. Appx. 233, 238 (5th Cir. 2015) (citing *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 2015)).

In *Woodridge v. Colvin*, 2015 WL 4253971 (M.D.La., 2016), the court addressed the Appeals Council's denial of claimant Woodridge's request for review of the ALJ's unfavorable decision. As in this case, the Woodrigde claimant through his counsel, submitted new evidence to the Appeals Council which included medical

---

[46] The Claimant's March 2015 CT scan documented "old left sided white matter infarcts. Old lacunar infarct in the right thalamus.... Small left posterior left frontal sub-cortical/cortical infarct noted" indicating that the claimant had suffered prior strokes.

records and a VA Award Notice dated after the ALJ rendered his Decision. Neither the medical records nor the Award Notice were made a part of the record by the Appeals Council nor included in the Administrative Record reviewed by the court. The court held that "to the extent the Award Notice relates to [the claimant's] condition during the relevant time period, it should have been considered by the Appeals Council." *Id.* at *7, note 30.   In determining that the decision of the Commissioner should be reversed and remanded for further proceedings, the court relied on the Fifth Circuit's reasoning in *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015).[47]

In *Sun,*  the Fifth Circuit reversed and remanded the Commissioner's denial of disability benefits because it was "unable to determine, from review of the record as a whole, if substantial evidence supports the Commissioner's denial of benefits...." There, claimant Sun originally sought treatment for a fractured ankle on May 28, 2011. The ALJ rendered an unfavorable decision on March 27, 2014. In denying claimant's application , the ALJ emphasized that the record contained "very minimal evidence of medical treatment since the alleged onset date and no evidence of medical treatment since August 2011." *Id*. at 506. Following the ALJ's ruling, the claimant requested review by the Appeals Council and submitted additional medical records

---

[47] The new evidence in *Sun* existed before the ALJ rendered his Decision.

documenting a second surgery seven months after the initial injury and additional treatment through June 4, 2012. *Id*. at 505-506. The Appeals Council denied the claimant's appeal.

Although the Fifth Circuit explained that the newly submitted evidence did not "necessarily contradict" the ALJ's findings, it found that the evidence was "significant" and "casts doubt on the soundness of the ALJ's decision." *Id*. at 512. Most significantly, the court explained, "[t]his court has held that the Commissioner's final decision necessarily includes an Appeals Council's denial of a claimant's request for review.... [therefore] the record before the Appeals Council constitutes part of the record upon which the final decision is based." *Id*. at 510 (citing *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir.2005) (adopting the reasoning of the Fourth, Ninth, and Tenth Circuits.). The court ultimately held "[d]espite the significance of this new evidence, no fact finder has made findings regarding the LSU clinical reports or attempted to reconcile these reports with other conflicting and supporting evidence in the record. Assessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance." *Id*. (citing *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011) and *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) ("Conflicts of evidence are for the Commissioner, not the courts, to resolve.")).

Here, despite the potential significance of the claimant's July 2015 stroke, no fact finder has made findings with regard to this newly-submitted evidence. As previously stated, this Court cannot determine whether substantial evidence supports the ALJ's denial of benefits. This new evidence may provide the ALJ and the Court with evidence which substantiates the claimant's disability. In such situation, remand is proper. *Sun v. Colvin,* 793 F.3d 502, 513 (5th Cir. 2015) (reversing the decision of the Commissioner and remanding case for a rehearing pursuant to 42 U.S.C. § 405(g) while expressing "no opinion as to whether [claimant] can ultimately establish that she is disabled within the meaning of the Social Security Act."). *See also, Nejmeh v. Colvin,* 2016 WL 642518, at *3 (N.D. Tex. Feb. 18, 2016) (reversing and remanding case for further proceedings due to court's inability "to determine whether substantial evidence supports the ALJ's denial of benefits" in light of "Impartial Medical Expert Interrogatories" submitted after the ALJ's ruling which were contrary to opinions relied upon by ALJ and noting that "[t]he ALJ's finding may still be correct and supported by substantial evidence, but the opinion of Dr. Amusa is significant and casts doubt upon the ALJ's finding.").

After considering the record as a whole, the Court, like the Fifth Circuit in *Sun,* is unable to determine whether substantial evidence supports the ALJ's denial of benefits. While the ALJ's finding may still be correct and supported by substantial

evidence, the medical records indicating a second stroke with a history of ongoing cerebrovascular infarcts/insults and total and partial occlusion of the left and right carotid arteries, respectively, is significant and casts doubt upon the ALJ's finding. Despite the significance of the claimant's July 16, 2015 stroke, no fact finder has attempted to reconcile those medical records with the ALJ's finding that the claimant's medical records related to his March 25, 2015 stroke and arterial occlusions showed no significant residual symptoms or limitations. "Assessing the probative value of competing evidence is quintessentially the role of the fact finder." *Sun*, 793 F.3d at 513 (citing *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011)). It is not the role of the Court to undertake such an assessment here. Therefore, remand of this matter is required.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above,

**IT IS THE RECOMMENDATION** of the undersigned that the Court REVERSE the decision of the Commissioner and REMAND this case for further proceedings consistent with this opinion under the fourth sentence of 42 U.S.C. § 405(g).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of

this report and recommendation to file specific, written objections with the Clerk of Court  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 20th day of March 2017.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE